BLECHER COLLINS PEPPERMAN & JOYE, P.C.
Maxwell M. Blecher (State Bar No. 26202)
 *mblecher@blechercollins.com*
Donald R. Pepperman (State Bar No. 109809)
 *dpepperman@blechercollins.com*
Taylor C. Wagniere (State Bar No. 293379)
 *twagniere@blechercollins.com*
515 South Figueroa Street, Suite 1750
Los Angeles, California 90071-3334
Telephone: (213) 622-4222
Facsimile: (213) 622-1656

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| BAY AREA SURGICAL MANAGEMENT, LLC, a California Limited Liability Company; BAY AREA SURGICAL GROUP, INC., a California Corporation; FOREST SURGERY CENTER, L.P., a California Limited Partnership; SOAR SURGERY CENTER, LLC, a California Limited Liability Company; KNOWLES SURGERY CENTER, LLC, a California Limited Liability Company; NATIONAL AMBULATORY SURGERY CENTER, LLC, a California Limited Liability Company; LOS ALTOS SURGERY CENTER, L.P., a California Limited Partnership,<br><br>                 Plaintiffs,<br><br>     vs.<br><br>AETNA LIFE INSURANCE COMPANY; UNITED HEALTHCARE SERVICES, INC.; E3 HEALTHCARE MANAGEMENT, LLC.; ALPINE HEALTHCARE, LLC; SILICON VALLEY SURGERY CENTER, L.P.; WAVERLEY SURGERY CENTER, L.P.; BASCOM SURGERY CENTER, L.P.; CAMPUS SURGERY CENTER, L.P.; EL CAMINO AMBULATORY SURGERY CENTER, LLC,<br><br>                 Defendants. | Case No. 5:15-cv-01416<br><br>**CIVIL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br><br>**1) SECTION ONE OF THE SHERMAN ACT;**<br>**2) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br>**3) INTENTIONAL INTERFERENCE WITH ACTUAL CONTRACTUAL RELATIONS;**<br>**4) THE CARTWRIGHT ACT; AND**<br>**5) 17200 *et seq.* - UNFAIR COMPETITION**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiffs file this Complaint against defendants Aetna Life Insurance Company, United Healthcare Services, Inc., E3 Healthcare Management, LLC, Alpine Healthcare, LLC, Silicon Valley Surgery Center, L.P., Waverley Surgery Center, L.P., Bascom Surgery Center, L.P., Campus Surgery Center L.P., and El Camino Ambulatory Surgery Center, LLC to secure damages and injunctive relief, and demanding trial by jury, claim and allege as follows:

## I.

## JURISDICTION AND VENUE

1. This Complaint is filed and this action is instituted under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26) to recover the damages caused by, and to secure injunctive relief against the named defendants' past and continuing violations of Section 1 of the Sherman Act (15 U.S.C. § 1).

2. This Court has original and exclusive jurisdiction over the subject matter of this civil action under 15 U.S.C. § 15 and 28 U.S.C. §§ 1331 and 1337. This Court may exercise supplement jurisdiction over the state law claims in the Second, Third, Fourth and Fifth Causes of Action pursuant to 28 U.S.C. § 1367. Each defendant maintains an office and transacts business on a systematic and continuous basis within this District, and may be found here, within the meaning of 15 U.S.C. §§ 15, 22 and 28 U.S.C. § 1391. Further, the unlawful acts alleged herein were performed and occurred in material part within this District.

## II.

## THE PARTIES

3. Plaintiff Bay Area Surgical Management, LLC (hereinafter "BASM") is a California limited liability company with a principal place of business located at 106 Heinz Ct., Los Gatos, California 95032. BASM manages some of the plaintiff ambulatory surgical centers ("ASCs") at which outpatient surgeries are performed.

4. Plaintiff Bay Area Surgical Group, Inc. (hereinafter "BASG") is a California corporation with a principal place of business located at 2222 Lafayette

1  Street, Suite 101, Santa Clara, California 95050.  BASG owns and operates an ASC
2  at that address at which outpatient surgeries are performed.
3       5.     Plaintiff Forest Surgery Center, L.P. (hereinafter "Forest Surgery") is a
4  California limited partnership with a principal place of business located at 2110
5  Forest Avenue, Suite 2, San Jose, California 95128.  Forest Surgery owns and
6  operates an ASC at that address at which outpatient surgeries are performed.
7       6.     Plaintiff SOAR Surgery Center, LLC (hereinafter "SOAR") is a
8  California limited liability company with a principal place of business located at
9  1849 Bayshore Highway, 3rd Floor, Burlingame, California 94010.  SOAR owns
10 and operates an ASC at that address at which outpatient surgeries are performed.
11      7.     Plaintiff Knowles Surgery Center, LLC (hereinafter "Knowles
12 Surgery") is a California limited liability company with a principal place of business
13 located at 555 Knowles Drive, Suite 115, Los Gatos, California 95032.  Knowles
14 Surgery owns and operates an ASC at that address at which outpatient surgeries are
15 performed.
16      8.     Plaintiff National Ambulatory Surgery Center, LLC (hereinafter
17 "National Ambulatory") is a California limited liability company with a principal
18 place of business located at 15251 National Avenue, No. 207, Los Gatos, California
19 95032.  National Ambulatory owns and operates an ASC at that address at which
20 outpatient surgeries are performed.
21      9.     Plaintiff Los Altos Surgery Center, L.P. (hereinafter "Los Altos
22 Surgery") is a California limited partnership with a principal place of business
23 located at 795 Altos Oaks Drive, Los Altos, California 94024.  Los Altos Surgery
24 owns and operates an ASC at that address at which outpatient surgeries are
25 performed.
26      10.    Aetna Life Insurance Company (hereinafter "Aetna") is a Connecticut
27 corporation with its principal place of business at 151 Farmington Avenue, Hartford,
28

-3-    5:15-cv-01416
CIVIL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Connecticut 06156 and is hereby named a defendant herein. Aetna conducts its business nationwide, including in the State of California.

11. United Healthcare Services, Inc. (hereinafter "United") is a Minnesota corporation with its principal place of business located at 9900 Bren Road East, Minnetonka, Minnesota 55443 and is hereby named a defendant herein. United conducts its business nationwide, including in the State of California.

12. E3 Healthcare Management, LLC (hereinafter "E3") is a California limited liability company engaged in managing at least five in-network ASCs in Northern California with its principal place of business at 14601 S. Bascom Ave., #100, Los Gatos, California 95032 and is hereby named a defendant herein.

13. Alpine Healthcare, LLC (hereinafter "Alpine") is a California limited liability company in Northern California with its principal place of business at 375 Forest Ave., Palo Alto, California 94301 and is hereby named a defendant herein. Alpine manages in-network ASCs in Northern California with E3.

14. Campus Surgery Center, L.P. (hereinafter "Campus") is a California limited partnership with a principal place of business at 901 Campus Drive, #102, Daly City, California 94015 and is hereby named a defendant herein. Campus owns and operates an ASC at that address at which outpatient surgeries are performed.

15. Waverley Surgery Center, L.P. (hereinafter "Waverley") is a California limited partnership with a principal place of business at 400 Forest Avenue, Palo Alto, California 94301 and is hereby named a defendant herein. Waverly owns and operates an ASC at that address at which outpatient surgeries are performed.

16. Silicon Valley Surgery Center, L.P. (hereinafter "Silicon Valley" ) is a California limited partnership with its principal place of business at 14601 S. Bascom Ave., #100, Los Gatos, California 95032 and is hereby named a defendant herein. Silicon Valley owns and operates an ASC at that address at which outpatient surgeries are performed.

17. Bascom Surgery Center, L.P. (hereinafter "Bascom") is a California limited partnership with its principal place of business at 3803 S. Bascom Ave., #106, Campbell, California 95008 and is hereby named a defendant herein. Bascom owns and operates an ASC at that address at which outpatient surgeries are performed.

18. El Camino Ambulatory Surgery Center, LLC (hereinafter "El Camino") is a California limited liability company with its with its principal place of business at 2480 Grant Road, Mountain View, California 94040 and is hereby named a defendant herein. El Camino owns and operates an ASC at that address at which outpatient surgeries are performed.

### III.

### SUMMARY OF THE CASE

19. This lawsuit is based on the concerted action of plaintiffs' major ASC competitor (E3), its ASC facilities, and the two insurance carrier defendants to deny reasonable payments to and a reasonable contractual arrangement with the named plaintiffs, or any of them, so that E3 and the carriers would control the ASC market and prices in Northern California.

20. Defendants who together exercise substantial influence on the market for ASC services in Northern California conceived and implemented a multifaceted anticompetitive scheme to exclude plaintiffs from the growing lucrative ASC market. Within the last few years, plaintiffs have contracted with an "all star" cast of surgeons creating a great surge in demand for access to its ASCs. To thwart plaintiffs' active and intense competition and to thwart the operation of freely functioning market forces, defendants have engaged in a concerted campaign that consists of at least the following anticompetitive and monopolistic acts: (a) inducing a group boycott of participating surgeons plaintiffs' ASCs; (b) inducing and persuading patients not to patronize plaintiffs' ASCs, (c) reducing the payments to

1  plaintiffs' ASCs; and (d) refusing to offer a reasonable and non-discriminatory
2  network contract to plaintiffs.

3      21.    As a consequence of this exclusionary conduct, competition in the ASC
4  market in Northern California has been suppressed and consumers in that market
5  have suffered a loss of choice and have been required to pay higher prices for
6  services performed at ASCs than would otherwise be the case in a competitive
7  market. The competitive process, plaintiffs and consumers have suffered antitrust
8  injury by reason of this unlawful trade restraining conduct. Given the actual and
9  demonstrable anticompetitive effects of defendants' conspiratorial conduct,
10 plaintiffs are entitled to rely on *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447,
11 460-61 (1986).

## IV.

## NATURE OF TRADE AND COMMERCE

14     22.    Each of the named defendant insurance providers Aetna and United
15 have the specific health benefit plan through which their insureds are provided
16 surgical and facility services covered by the plan which are reimbursable. The plans
17 also determine the extent to such insured bears financial responsibility, if any, for a
18 portion of the charges through a copayment, coinsurance or deductible amount.

19     23.    The amount paid by a health benefit plan for covered services is further
20 dependent upon whether the services were provided by in-network or out-of-
21 network providers, i.e., the surgeon and surgical facility. In-network providers
22 accept a discounted rate in exchange for participation in the insured's network.
23 Insureds who choose an in-network provider are assured that, for covered services,
24 their responsibility for payment is limited to any applicable copayment, coinsurance
25 and deductible amounts provided in their plan. Out-of-network services, however,
26 do not include this assurance. Different benefit plans include different provisions
27 for the rate at which out-of-network services will be reimbursed by the carrier. In
28 addition to any applicable copayment, coinsurance and deductible amounts,

Blecher Collins Pepperman & Joye

1  members are ultimately responsible for the difference between the amount billed by
2  an out-of-network provider and the amount allowed by the plan for out-of-network
3  services.  The amount allowed for out-of-network services is often referred to as the
4  "allowed amount" or "recognized amount."

5       24.    Unlike in-network providers, out-of-network providers do not have the
6  right, as service providers, to seek payment for their services from the carrier based
7  on pre-negotiated fixed rates.  Instead, out-of-network providers submit bills for
8  their services to the carrier on behalf of the insured (through an assignment of
9  benefits), and the carrier then determines the amount it will pay based on the
10 allowed or recognized amount in its policy with the insured.

11      25.    The American Medical Association ("AMA") publishes and licenses an
12 annual compendium of CPT Codes, which has become the standard source for
13 coding procedures for billing purposes in the health care industry.  The CPT Code
14 is, therefore, the standard means for describing the health care services rendered by
15 providers when submitting claims for payment to health plans and the federal
16 government.

17      26.    Payment of benefits is made after a review of the services provided as
18 represented on a reasonably standard claim form.  A claim for benefits must include
19 a description of the services provided to the insured.  Providers describe the services
20 by assigning a CPT Code and/or revenue code to each service rendered. The claim
21 form also includes a representation from the provider of the amount the provider
22 charged to the member for the described services.

## V.

## INTERSTATE COMMERCE

25      27.    The actions complained of herein will continue to restrain and
26 adversely affect interstate commerce in that the defendant insurance carriers sell
27 their policies and services across state lines.  Defendant E3 and each plaintiff
28 purchase goods and supplies in interstate commerce.

## FIRST CAUSE OF ACTION

### (Violation of Section One of the Sherman Act)

### (15 U.S.C. § 1)

28. Plaintiffs hereby allege and incorporate by reference each allegation set forth in Paragraphs 1 through 27, as if set forth in full herein.

29. Section 1 of the Sherman Act (15 U.S.C. § 1) prohibits, inter alia, agreements or arrangements that unreasonably restrain competition in interstate commerce.

30. The relevant product market for antitrust purposes in this case is defined as the provision of surgical services through ambulatory surgical centers. Ambulatory surgical centers do not effectively compete with regular hospitals which in most cases provide longer term care for surgical patients where ASCs are not permitted to have patients overnight at their facilities. Moreover, ASCs generally do not provide emergency services. Finally, ASCs specifically have both lower prices and costs. Aetna and United comprised approximately 25% of plaintiffs' cases prior to Aetna and United's initiation of litigation in February 2012 when doctors stopped referring their cases to plaintiffs and were intimidated and scared off by insurance company threats. Following the initiation of the lawsuits, BASM's Aetna/United cases declined to about half or less of what they were while the amount that they actually paid on the remaining cases also took a steep decline, if anything was paid at all. At best there would be some modest overlap but, in the main, hospitals and ASCs provide care to two entirely distinct sets of patients. The relevant geographic market for antitrust purposes is Northern California.

31. Plaintiffs have the requisite standing to assert antitrust claims against defendants because they are participants and competitors in the relevant market and have suffered injury by reason of the restraints.

32. The anticompetitive scheme and plan of the defendants to unreasonably restrain trade in the above-described trade and commerce has been done with the

intent to specifically eliminate plaintiffs as viable competitors and as a threat to E3's business operation, and to reduce competition in general.  Beginning in early 2010 and continuing thereafter, E3, Aetna and United engaged in a continuous stream of communications about plaintiffs with the objective of eliminating, restraining or substantially reducing plaintiffs' ability to compete in the ASC market in Northern California.  There have been numerous writings, conversations and meetings among these three entities to accomplish this objective.  These agreements and combinations constitute unreasonable restraints of trade.  The overall anticompetitive scheme consists of at least the following acts/conduct to be viewed as a whole:

(a) E3 has importuned the insurance company defendants to confine and restrain the activities of plaintiffs, its singular main ASC competitor;

(b) successfully threatening, intimidating and coercing actual and potential surgeons not to deal with plaintiffs;

(c) inducing, organizing and implementing a group boycott of or concerted refusal to deal among surgeons not to deal with plaintiffs;

(d) inducing, organizing and implementing a group boycott among plaintiffs' patients not to patronize plaintiffs' ASCs;

(e) refusing to enter into a reasonable and non-discriminatory network facilities fee contract with plaintiffs that would assure their ability to compete on a level playing field; and

(f) consistently refusing to pay, or underpaying, plaintiffs' claims submitted to the carrier defendants for facility fees.

33. As a direct result of the foregoing anticompetitive conduct and restrictions on competition, ambulatory surgical centers, and surgeons have been restricted from functioning in a competitive and open market, output has been limited and the quality and choice of facilities and surgeons among patients has been reduced and diminished in this market.  Because of the combinations and

conspiracy, the ability of plaintiff to attract surgeries has been severely impacted and the number of surgeries performed by plaintiffs has diminished seriously. Moreover, patients have been required to pay coinsurance so that costs to consumers have increased. There are no business, technological or efficiency reasons or justifications that require defendants to impose these anticompetitive conditions and restrictions.

34. Defendants' restrictions, threats and arrangements have created a barrier that precludes effective entry by other competitors into the relevant market and the quality and variety of offerings in that market have been reduced and constrained.

35. Defendants' arrangements are unlawful under the antitrust laws when assessed under the "Rule of Reason." The anticompetitive consequences of defendants' conduct outweigh any procompetitive effects thereof.

36. The aforesaid conduct of defendants has produced antitrust injury, and unless enjoined by this Court, will continue to produce at least the following anticompetitive, exclusionary and injurious effects upon competition in interstate commerce:

(a) competition in the provision of surgical services in Northern California has been substantially and unreasonably restricted, lessened, foreclosed and eliminated;

(b) barriers to entry into the market have been raised;

(c) consumers choice has been, and will continue to be, significantly limited and constrained as to selection, price and quality of ambulatory surgical services in Northern California; and

(d) consumer access to plaintiffs' competitive surgical centers will be artificially restricted and reduced and its products will continue to be excluded from the market.

-10-                                                            5:15-cv-01416
CIVIL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  37. Defendants' restrictions and arrangements affect a substantial volume of interstate commerce in the relevant market.

38. Defendants' predatory and exclusionary conduct has caused antitrust injury to plaintiffs, competition and consumers.

39. By reason of, and as a direct and proximate result of defendants' practices and conduct, plaintiffs have suffered, and will continue to suffer, financial injury to their business and property. As a result, plaintiffs have been deprived of revenues and profits they would have otherwise made, suffered diminished market growth and sustained a loss of goodwill. Plaintiffs have not yet calculated the precise extent of its past damages and cannot now estimate with precision the future damages that continue to accrue, but when they do so, they will seek leave of the Court to insert the amount of the damages sustained herein

## SECOND CAUSE OF ACTION

**(Intentional Interference With Prospective Economic Advantage)**

40. Plaintiffs hereby allege and incorporate by reference each allegation set forth in Paragraphs 1 through 39, as if set forth in full herein.

41. This Court has jurisdiction over this Second Cause of Action based on the doctrine of supplemental jurisdiction (28 U.S.C. § 1367) because this Second Cause of Action arises from the same transactions and from a common nucleus of operative facts as alleged in the first federal based cause of actions.

42. Each named plaintiff has existing and valuable business relationships, as well as reasonable expectations of further and future relationships, with surgeons and their actual and prospective surgical patients.

43. Defendants were each aware of these prospective business contractual relationships and engaged in intentional and wrongful conduct designed or calculated to disrupt and interfere with those relationships. Defendants knew disruptions or interferences were substantially certain to occur as a result of their conduct.

44. Defendants' conduct in interfering with such prospective business contractual relations is intentional, malicious and without justification and such conduct and overall scheme was undertaken solely to hinder, if not eliminate, competition. Defendants' anticompetitive conduct was not privileged or excused and was without any legitimate business justification. Defendants have knowingly engaged in such wrongful conduct for the purpose of excluding competition and to deprive consumers of the benefits of free and open competition. In doing so, defendants have wrongfully interfered with the relationship of one or more plaintiffs and the following physicians, among others: Dr. Andy Yu, Dr. Peter Yuan, Dr. Julia Kahan, Dr. Norman Kahan, Dr. Samir Sharma, Dr. Jeff Gutman, and Dr. Shahram Gholami.

45. By actions, including but not limited to the unfair, anticompetitive and/or predatory acts set herein, defendants intended induce plaintiffs' physicians and patients to end or disrupt their prospective economic relationships with plaintiffs. Defendants' conduct was a substantial factor in causing financial injury to each plaintiff and has rendered it more difficult for each plaintiff to remain and survive as a viable competitor

46. Plaintiffs' business and goodwill has been, and will continue to be, substantially injured by defendants' wrongful and unjustified conduct. Additionally, prospective customers of each plaintiff will continue to be injured and harmed by defendants' acts and practices. Although each plaintiff has incurred substantial losses as a proximate result of the foregoing acts, and will continue to incur substantial losses in the future as well as its growth being negatively impacted, all such losses may be difficult to calculate with precision. Therefore, in addition to any recoverable damages proximately caused by the alleged wrongful conduct, each plaintiff will also seek a permanent injunction preventing defendants from continued wrongful interference in the future.

47. The intentional and disruptive conduct of each defendant was willful, malicious and oppressive. Consequently, an award of exemplary or punitive damages in an amount sufficient to punish and deter such conduct is justified.

### THIRD CAUSE OF ACTION

### (Intentional Interference With Actual Contractual Relations)

48. Plaintiffs hereby allege and incorporate by reference each allegation set forth in Paragraphs 1 through 47, as if set forth in full herein.

49. This Court has jurisdiction over this Third Cause of Action based on the doctrine of supplemental jurisdiction (28 U.S.C. § 1367) because this Third Cause of Action arises from the same transactions and from a common nucleus of operative facts as alleged in the first federal based cause of actions.

50. Each named plaintiff has existing and valuable contracts with surgeons and their actual and prospective surgical patients.

51. Defendants were each aware of these contractual relationships, as well as the identity of plaintiffs' surgeons and their patients, and engaged in intentional and wrongful conduct designed or calculated to disrupt the performance of those contracts.

52. Defendants' conduct in interfering with such contractual relations is intentional, malicious and without justification and such conduct and overall scheme was undertaken solely to hinder, if not eliminate, competition. Defendants' anticompetitive conduct was not privileged or excused and was without any legitimate business justification. Defendants have knowingly engaged in such wrongful conduct for the purpose of excluding competition and to deprive consumers of the benefits of free and open competition. In doing so, defendants have wrongfully interfered with the relationship of one or more plaintiffs and the following physicians, among others: Dr. Andy Yu, Dr. Peter Yuan, Dr. Julia Kahan, Dr. Norman Kahan, Dr. Samir Sharma, Dr. Jeff Gutman, and Dr. Shahram Gholami.

53. By actions, including but not limited to the unfair, anticompetitive and/or predatory acts set herein, defendants intended to and did in fact, induce or cause plaintiffs' physicians and patients to breach, end or restrict their contractual relationships with plaintiffs. As a result, defendants' conduct has prevented the performance, maintenance or completion of plaintiffs' existing and valuable contracts, or has made performance more difficult.

54. Defendants' conduct was a substantial factor in causing financial injury to each plaintiff. Plaintiffs' business and goodwill has been, and will continue to be, substantially injured by defendants' wrongful and unjustified conduct. Additionally, actual and prospective customers of each plaintiff will continue to be injured and harmed by defendants' acts and practices. Although each plaintiff has incurred substantial losses as a proximate result of the foregoing acts, and will continue to incur substantial losses in the future as well as its growth being negatively impacted, all such losses may be difficult to calculate with precision. Therefore, in addition to any recoverable damages proximately caused by the alleged wrongful conduct, each plaintiff will also seek a permanent injunction preventing defendants from continued interference in the future.

55. The intentional and disruptive conduct of each defendant was willful, malicious and oppressive. Consequently, an award of exemplary or punitive damages in an amount sufficient to punish and deter such conduct is justified.

## FOURTH CAUSE OF ACTION

### (Violation Of The Cartwright Act)

### (Cal. Bus. & Prof. Code §§ 16720 *et seq.*)

56. Plaintiffs hereby allege and incorporate by reference each allegation set forth in Paragraphs 1 through 55, as if set forth in full herein.

57. This Court has jurisdiction over this Fourth Cause of Action based on the doctrine of supplemental jurisdiction (28 U.S.C. § 1367) because this Fourth

Cause of Action arises from the same transactions and from a common nucleus of operative facts as alleged in the first federal based cause of actions.

58. During all relevant periods, plaintiffs conducted a substantial volume of business in California. California is plaintiffs' place of incorporation and principal place of business. As a result of plaintiffs' business operations and substantial contacts in California, plaintiffs are entitled to the protection of the laws of California.

59. Defendants conduct a substantial volume of business in California, including but not limited to entering into contracts with ASC facilities, physicians, and patients in California.

60. Defendants entered into and engaged in an unlawful trust in restraint of the trade and commerce and prohibited by and contrary to the public policy of California under California Business and Professions Code section 16720 *et seq*.

61. Plaintiffs have the requisite standing to assert claims under California Business and Professions Code section 16720 *et seq.* because they are participants and competitors in the market for the provision of surgical services in Northern California ASCs and have suffered injury by reason of defendant's unlawful restraints, including but not limited to the unreasonable and substantial restriction of competition for the provision of surgical services in Northern California, significantly limited consumer choice for ambulatory surgical services in Northern California, and consumers' reduced access to plaintiffs' competitive surgical centers.

62. The actions of the defendants have the purpose and effect of eliminating or substantially restricting competition between plaintiffs and ASC competitors, and inducing or coercing a group boycott of or concerted refusal to deal among surgeons and patients not to deal with plaintiffs. Defendants have also combined to restrain competition by consistently refusing to pay, or underpaying,

plaintiffs' claims for facility fees, and refusing to enter into a reasonable and non-discriminatory facilities fee contract with plaintiffs.

63. The anticompetitive effect of these restraints outweighs any beneficial effect of competition.

64. As a direct and proximate result of defendants' combinations and contracts to restrain trade and eliminate competition, plaintiffs have suffered injury and have been deprived of the benefits of free and fair competition on the merits. Defendants' anticompetitive conduct, unless restrained, will continue to unreasonably limit, reduce or suppress actual and potential competition and intrastate commerce in the Northern California market for surgical services through ambulatory surgical centers; raise substantial barriers to entry into the market for ambulatory surgical centers in Northern California; significantly restrict or eliminate consumer choice as to selection, price and quality of facilities and surgeons in Northern California; and artificially restrain consumer access to plaintiffs' competitive surgical centers.

65. Because of defendants' actions, plaintiffs have suffered the loss of reasonably anticipated sales and profits, an increase in expenses, and other damages to be proven at trial. Pursuant to California Business and Professions Code section 16750, plaintiffs are entitled to recover compensatory and treble damages, injunctive relief, and reasonable attorneys' fees and costs of suit.

## FIFTH CAUSE OF ACTION
### (Unfair Competition in Violation of
### Cal. Bus. & Prof. Code §§ 17200 *et seq*.)

66. Plaintiffs hereby reallege and incorporate by reference each allegation set forth in Paragraphs 1 through 65, as if set forth in full herein.

67. This Court has jurisdiction over this Fifth Cause of Action based on the doctrine of supplemental jurisdiction (28 U.S.C. § 1367) because this Fifth Cause of

1  Action arises from the same transactions and from a common nucleus of operative
2  facts as alleged in the first federal based cause of action.

3  68. Section 17200 *et seq.* of the California Business & Professions Code is written in the disjunctive and broadly covers three varieties of unfair competition – acts that are unlawful or unfair or fraudulent. The statute's intent and purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. The coverage of Section 17200 *et seq.* is broad and intended to "enjoin on-going wrongful business conduct in whatever context such activity might occur." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 181.

69. Each plaintiff is a "person" within the meaning of California Business & Professions Code § 17201.

70. As alleged herein, defendants' conduct constitutes "unfair" business practices. A practice may be deemed unfair even if not specifically proscribed by some other law. Conduct that significantly threatens or harms competition, or threatens an incipient violation of an antitrust law, may be deemed to be "unfair."

71. As alleged herein, defendants' anticompetitive conduct is also "unlawful." Within the meaning of section 17200, virtually any violation of any civil or criminal federal, state or municipal, statutory, regulatory, court-made or local law can serve as a predicate for an "unlawful" claim. *Law Offices of Mathew Higbee v. Expungement Assistance Services* (2013) 214 Cal.App.4th 544, 553. The violations of the federal antitrust laws as alleged herein, satisfy the "unlawful" prong of section 17200.

72. By reason of, and as a direct and proximate result of defendants' unfair and unlawful practices and conduct, each plaintiff has suffered and will continue to suffer, financial injury to its business and property.

73. Defendants' unfair and unlawful conduct has caused harm to each plaintiff, competition and consumers. Nonetheless, the UCL is a strict liability

1 statute and it is not necessary to show that defendants intended to injure or harm
2 plaintiffs.
3     74.    Pursuant to Business & Professions Code section 17203, the entry of
4 permanent and mandatory injunctive relief against each defendant is necessary to
5 enjoin defendants' ongoing unfair and/or unlawful business conduct.  Plaintiffs can
6 seek an injunction whether or not restitution is also available.  An injunction is
7 needed to enable and restore competition in the market for surgical services
8 rendered through ambulatory surgical centers.

## **PRAYER FOR RELIEF**

10     WHEREFORE each plaintiff prays that this Court adjudges and decrees and
11 follows:
12     1.    The conduct alleged in the First Cause of Action herein be adjudged to
13 be an unreasonable restraint of trade in violation of Section 1 of the Sherman Act
14 (15 U.S.C. § 1);
15     2.    The conduct alleged in the Second Cause of Action herein be adjudged
16 to constitute intentional interference with prospective economic advantage;
17     3.    The conduct alleged in the Third Cause of Action herein be adjudged to
18 constitute intentional interference with actual contractual relationships;
19     4.    The conduct alleged in the Fourth Cause of Action herein be adjudged
20 to constitute a violation of the Cartwright Act;
21     5.    The conduct alleged in the Fifth Cause of Action herein be adjudged to
22 be unfair and/or unlawful in violation of Section 17200 *et seq.* of the California
23 Business & Professions Code;
24     6.    Pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15), plaintiff
25 recover treble the actual amount of its damages sustained by reason of those federal
26 antitrust violations;
27     7.    Pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15), plaintiff be
28 awarded a reasonable attorneys' fee and costs of litigation;

1    8.    Pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), the anticompetitive, predatory and/or exclusionary conduct be permanently enjoined;

9.    Plaintiffs be awarded punitive or exemplary damages on its tort claim under the Second Cause of Action;

10.   Pursuant to Section 17203 of the California Business & Professions Code, the unfair and/or unlawful business practices of defendants be permanently enjoined;

11.   Pursuant to Section 1021.5 of the California Code of Civil Procedure, each plaintiff be awarded reasonable attorneys' fees; and

12.   For such other and further relief as the Court deems just and proper.

Dated: March 26, 2015         BLECHER COLLINS PEPPERMAN & JOYE
                              MAXWELL M. BLECHER
                              DONALD R. PEPPERMAN
                              TAYLOR C. WAGNIERE


                              By: _____
                                     Maxwell M. Blecher
                                     Attorneys for Plaintiffs

-19-   5:15-cv-01416
CIVIL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## DEMAND FOR JURY TRIAL

Each named plaintiff hereby demands trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated:  March 27, 2015

BLECHER COLLINS PEPPERMAN & JOYE
MAXWELL M. BLECHER
DONALD R. PEPPERMAN
TAYLOR C. WAGNIERE

By: /s/ *Maxwell M. Blecher*
Maxwell M. Blecher
Attorneys for Plaintiffs

72373.2