1

2

3

4

**UNITED STATES DISTRICT COURT**

5

**NORTHERN DISTRICT OF CALIFORNIA**

6

**SAN JOSE DIVISION**

7

8

BAY AREA SURGICAL MANAGEMENT
LLC, et al.,

Case No.   15-cv-01416-BLF

9

Plaintiffs,

10

v.

**ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS WITH LEAVE
TO AMEND**

11

AETNA LIFE INSURANCE COMPANY, et
al.,

12

[Re:  ECF 31, 35]

13

Defendants.

14        Plaintiffs Bay Area Surgical Management, LLC, Bay Area Surgical Group, Inc., Forest

15 Surgery Center, L.P., SOAR Surgery Center, LLC, Knowles Surgery Center, LLC, National

16 Ambulatory Surgery Center, LLC, and Los Altos Surgery Center, L.P. bring this action alleging

17 violations of the Sherman Act, intentional interference with prospective economic advantage,

18 intentional interference with actual contractual relations, violations of California's antitrust statute,

19 the Cartwright Act, and violations of California's Unfair Competition Law against Defendants E3

20 Healthcare Management LLC, Alpine Healthcare, LLC, Bascom Surgery Center, L.P., Campus

21 Surgery Center L.P., El Camino Ambulatory Surgery Center, LLC, Silicon Valley Surgery Center,

22 L.P., and Waverley Surgery Center, L.P.'s (collectively "E3"), Defendant United Healthcare

23 Services, Inc. and Defendant Aetna Life Insurance Company (collectively "Insurers").  Before the

24 Court are Defendant E3 and Defendant Insurers' motions to dismiss Plaintiffs' complaint,

25 pursuant to Fed. R. Civ. P. 12(b)(6).  The Court has considered the briefing submitted by the

26 parties and the oral argument presented at the hearing on August 6, 2015.  For the reasons

27 discussed below, Defendant E3's and Defendant Insurers' motions to dismiss are GRANTED with

28 LEAVE TO AMEND.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

United States District Court
Northern District of California

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   BACKGROUND

### A.   General Factual Background

The following factual allegations are taken from Plaintiffs' Complaint.  Plaintiff Bay Area Surgical Management, LLC manages ambulatory surgical centers, including some owned and operated by the other Plaintiffs.  Compl. ¶ 3.  The remaining six Plaintiffs own and operate ambulatory surgery centers at which outpatient surgeries are performed.  *Id*. ¶¶ 4-9.  Defendant Insurers are health insurance companies doing business in California.  *Id*. ¶¶ 10-11.  Defendants E3 Healthcare Management, LLC and Alpine Healthcare, LLC manage ambulatory surgery centers in Northern California.  *Id*. ¶¶ 12-13.  The remaining five Defendants own and operate ambulatory surgery centers at which outpatient surgeries are performed.  ¶¶ 13-17.

Both of the Defendant Insurers have health benefit plans through which their insureds are reimbursed for covered surgical and facility services.  *Id.* ¶ 22.  The amount reimbursed by the health benefit plans depends on whether the services were performed by in-network or out-of-network providers.  *Id*. ¶ 23.  In-network service providers agree to a lower reimbursement rate in exchange for participation in Defendant Insurers' networks.  *Id*. ¶ 23.  Insureds who utilize in-network service providers are required only to pay any applicable copayment or coinsurance along with the deductible amount provided in the plan.  *Id*.  On the other hand, out-of-network service providers are reimbursed at specific rates delineated in each insureds' benefit plan.  *Id*.  Insureds are therefore responsible for any applicable copayment, coinsurance, and deductible amount as well as the difference charged by the out-of-network service provider and the amount reimbursed by Defendant Insurers.  *Id*.

In early 2010 and continuing thereafter, Plaintiffs allege that Defendants conspired to suppress competition in the ambulatory surgery market in Northern California by inducing and persuading physicians and patients not to use Plaintiffs' ambulatory surgery centers, reducing payments to Plaintiffs' ambulatory surgery centers, and refusing to offer a reasonable and non-discriminatory in-network contract to Plaintiffs.  *Id*. ¶¶ 20-21, 32.  According to Plaintiffs, Defendants "engaged in a continuous stream of communications about Plaintiffs with the objective of eliminating, restraining or substantially reducing [P]laintiffs' ability to compete" in

2

1    the ambulatory surgical center market in Northern California." *Id.* ¶ 32.  Plaintiffs allege that

2    there "have been numerous writings, conversations and meetings among [Defendants] to

3    accomplish this objective." *Id.*

4        As a result of Defendants' conduct, Plaintiffs allege that ambulatory surgical centers and

5    surgeons have been restricted from functioning in a competitive and open market, the ability of

6    Plaintiffs to attract patients has been severely impacted, and patients have been required to pay

7    coinsurance so that costs to consumers have increased.  *Id.* ¶ 33.  Moreover, Plaintiffs allege that

8    Defendant's conduct wrongfully interfered with actual and prospective contractual relationships

9    between Plaintiff and physicians Dr. Andy Yu, Dr. Peter Yuan, Dr. Julia Kahan, Dr. Norman

10   Kahan, Dr. Samir Sharma, Dr. Jeff Gutman, and Dr. Shahram Gholami.  *Id.* ¶¶ 44, 52.

11       **B.     Procedural Background**

12       On March 27, 2015, Plaintiffs filed a complaint against Defendants.  ECF 1.  On May 22,

13   2015, Defendant E3 and Defendant Insurers filed motions to dismiss the respective claims against

14   them.  ECF 31, 35.  Plaintiffs filed oppositions on June 29, 2015, ECF 49, 51 and Defendants filed

15   replies on July 23, 2015.  ECF 53, 54.  The parties appeared before the Court for oral argument on

16   August 6, 2015.  ECF 56.

17   **II.    LEGAL STANDARD**

18       **A.     Rule 12(b)(6)**

19        A motion to dismiss under Rule 12(b)(6) concerns what facts a plaintiff must plead on the

20   face of the complaint.  Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint

21   must include "a short and plain statement of the claim showing that the pleader is entitled to

22   relief."  Any complaint that does not meet this requirement can be dismissed pursuant to Rule

23   12(b)(6).  A "short and plain statement" demands that a plaintiff plead "enough facts to state a

24   claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007),

25   which requires that "the plaintiff plead factual content that allows the court to draw the reasonable

26   inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

27   678 (2009).  The Court must "accept factual allegations in the complaint as true and construe the

28   pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire &*

United States District Court
Northern District of California

1    *Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

2    **B.      Leave to Amend**

3          Under Rule 15(a), a court should grant leave to amend "when justice so requires," because

4    "the purpose of Rule 15…[is] to facilitate decision on the merits, rather than on the pleadings or

5    technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  A court may deny

6    leave to amend for several reasons, including "undue delay, bad faith, . . . [and] futility of

7    amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

8    **C.      Requests for Judicial Notice**

9          Although a district court generally may not consider any material beyond the pleadings in

10   ruling on a Rule 12(b)(6) motion, the Court may take judicial notice of documents referenced in

11   the complaint, as well as matters in the public record, without converting a motion to dismiss into

12   one for summary judgment.  *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001),

13   overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir.

14   2002).  In addition, the Court may take judicial notice of matters that are either "generally known

15   within the trial court's territorial jurisdiction" or "can be accurately and readily determined from

16   sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Public records,

17   including judgments and other court documents, are proper subjects of judicial notice. *See, e.g.,*

18   *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).

19         Plaintiffs and Defendant E3 request judicial notice of court documents from prior actions

20   filed by Plaintiffs in Santa Clara Superior Court.  ECF 32, 50.  Specifically Plaintiff requests

21   judicial notice of two orders filed in a prior state court action and the docket from the case, ECF

22   50 at 2, and Defendant E3 request judicial notice of an amended complaint and order of dismissal

23   from a different state court action filed by Plaintiffs.  ECXF 32 at 2.  Since these documents are

24   court documents, they are the proper subject of judicial notice and the Court GRANTS both

25   Plaintiffs' and Defendant E3's requests for judicial notice.

26

27

28

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.     DISCUSSION

### A.     Sherman Act

Section 1 of the Sherman Act ("Section 1") prohibits unreasonable contracts or combinations in restraint of trade.  15 U.S.C. § 1.  A plaintiff may allege violations of Section 1 under one or more of the following "three rules of analysis: the rule of reason, per se, or quick look." *United States v. eBay, Inc.*, 968 F. Supp. 2d 1030, 1037 (N.D. Cal. 2013).  Under the rule of reason, a plaintiff must plead four separate elements: (1) the existence of a conspiracy, (2) the intention on the part of the co-conspirators to harm or restrain competition, (3) actual injury to competition, and (4) that the plaintiffs suffered "antitrust injury" as a result of the conspiracy.  *See Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012).  The per se approach has been applied to group boycotts when there has generally been "joint efforts by a firm or firms to disadvantage competitors," *Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 949 (9th Cir 1998) (quoting *Nw. Wholesale Stationers, Inc. v. Pac. Stationery and Printing Co.*, 472 U.S. 284, 293-94 (1985)), but the Supreme Court has cautioned that "the category of activities comprising group boycotts 'is not to be expanded indiscriminately.'"  *Id*. at 950.  As a result, to help guard against the over-application of per se group boycotts, the Ninth Circuit has identified three characteristics that are indicative of a per se group boycott: "(1) the boycott cuts off access to a supply, facility, or market necessary to enable the victim firm to compete; (2) the boycotting firm possesses a dominant market position; and (3) the practices are not justified by plausible arguments that they enhanced overall efficiency or competition."  *Id*. (quoting *Hahn v. Oregon Physicians' Serv.*, 868 F.2d 1022, 1030 (9th Cir. 1988)).  Finally, a quick look analysis may be used where "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets."  *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1134 (9th Cir. 2011) (citing *California Dental Ass'n v. FTC*, 526 U.S. 756, 770 (1999)).

For a Section 1 antitrust claim, the complaint must allege facts "plausibly suggesting (not merely consistent with) a conspiracy.  It is not enough merely to include conclusory allegations that certain actions were the result of a conspiracy; the plaintiff must allege facts that make the

1    conclusion plausible." *Name.Space, Inc. v. Internet Corp. for Assigned Names and Numbers*, 795

2    F.3d 1124, 1129 (9th Cir. 2015) (internal citations and quotations omitted).  A court cannot "infer

3    an anticompetitive agreement when factual allegations just as easily suggest rational, legal

4    business behavior." *Id*. at 1130.

5                              **1.        Pleading Requirements**

6            As a threshold issue, the parties do not even agree on whether Plaintiffs are pursuing

7    antitrust claims under the rule of reason, per se approach, and/or quick look approach.

8    Defendants[1] argue that Plaintiffs' Complaint "expressly alleges that the 'rule of reason'" applies.

9    Def. Insurers' Reply at 7, ECF 54; Def. E3's Reply at 2, ECF 53.  Plaintiffs argue that the

10   language in the Complaint does not "obviate the fact that group boycotts…are also *per se*

11   violations," Pls.' Opp to Insurers at 13 n.7, ECF 49, Pls.' Opp to E3 at 7 n.4, ECF 51, but also

12   seemingly concede Defendants' argument and claim that "it is not worth the potential delay to

13   amend the Complaint." *Id*.

14           The Court agrees with Defendants and finds that based on the Complaint, Plaintiffs are

15   pursuing an antitrust claim under the rule of reason.  Plaintiffs' Complaint expressly states that

16   "Defendants' arrangements are unlawful under the antitrust laws when assessed under the 'Rule of

17   Reason.'" Compl. ¶ 35.  Despite Plaintiffs' attorney argument to the contrary, in a motion to

18   dismiss, the Court relies on the words in the Complaint.  This is especially true in antitrust cases

19   where a plaintiff is not "obliged to plead under each possible [rule of analysis.]" *eBay, Inc.*, 968

20   F. Supp. 2d at 1037 ("A plaintiff is the master of its complaint and may choose which claims to

21   allege.").  Plaintiffs must abide by the consequences of its pleading decision and cannot, at its

22   convenience, switch to a theory not plead in the Complaint.  *See, e.g., Texaco*, *Inc. v. Dagher*, 547

23   U.S. 1, 7 n.2 (declining to review an antitrust claim under the rule of reason because Plaintiffs had

24   not pled such a claim); *Fox v. Good Samaritan Hosp. LP*, Case No. 04-00874-RS, 2008 WL

25   2805407, at *4 n.3 (N.D. Cal. July 17, 2008) (finding that a party cannot begin with a per se claim

26

27   ---
[1] Defendant E3 and Defendant Insurers filed separate motions to dismiss with overlapping
28   arguments.  To the extent Defendants make the same arguments, the Court addresses those
     arguments together in this Order.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   and then later switch theories).  Accordingly, based on the Complaint, the Court concludes that

2   Plaintiffs are pursuing the Sherman Act claim under a rule of reason analysis.

3   **2.  Rule of Reason Analysis**

4   Under the rule of reason, Plaintiffs must adequately allege (1) the existence of a

5   conspiracy; (2) the intention on the part of the co-conspirators to harm or restrain competition; (3)

6   actual injury to competition; and (4) that the plaintiffs suffered "antitrust injury" as a result.

7   *Brantley*, 675 F.3d at 1197.  A failure to sufficiently plead any of these four elements warrants

8   dismissal of Plaintiffs' Sherman Act claims.  *See id*.  Both Defendants argue that Plaintiffs have

9   failed to plead the existence of a conspiracy or actual injury to competition.

10   **a.  Existence of a Conspiracy**

11   Both Defendants argue that Plaintiffs have failed to adequately allege the existence of a

12   conspiracy.  Defendant Insurers also argue that Plaintiffs' alleged conspiracy does not make

13   economic sense and that to the extent Plaintiffs have alleged facts, those facts are consistent with

14   independent action.

15   1.   Factual Allegations

16   Defendants argue that Plaintiffs' Complaint lacks the necessary factual allegations

17   describing the "who, what, when, where, and why" of the alleged conspiracy.  Def. Insurers' Mot.

18   at 8, ECF 35, Def. E3's Mot. at 12, ECF 31.  According to Defendants, Plaintiffs have not

19   factually supported the "naked allegation" that Defendants engaged in a conspiracy through a

20   "continuous stream of communications" and "numerous writings, conversations and meetings."

21   Def. Insurers' Mot. at 9, ECF 35.  Plaintiffs counter that circumstantial evidence is nearly always

22   used to prove a conspiracy and although they have sufficiently alleged the "who, what, when,

23   where, and why," that level of specificity is not required in antitrust cases.  Pls.' Opp. to Def.

24   Insurers at 7-8, ECF 49.  Plaintiffs argue that they have alleged the "who" as Aetna, United, and

25   E3; the "when" as "early 2010 and continuing thereafter;" the "what" as "restrain[ing] competition

26   in the ASC market, restrict[ing] patient choice as to selection, price and quality of surgical

27   facilities and physicians, damg[ing] BASM's reputation, and [eliminating] BASM as a viable

28   competitor;" the "why" as keeping BASM out-of-network allowed Defendants to refuse to pay or

7

United States District Court
Northern District of California

1    under pay BASM, and allowed Defendant E3 to benefit from this artificial restraint.   *Id* at 8.

2           The Court agrees with Defendants and finds that Plaintiffs' Complaint fails to plead

3    sufficient facts to support the claim that Defendants formed a conspiracy.   In *Kendall v. Visa*, 518

4    F.3d 1042, 1049 (9th Cir. 2008), the Ninth Circuit held that a claim under Section 1 the Sherman

5    Act must "answer the basic questions: who, did what, to whom (or with whom), where, and

6    when?"[2]  The Ninth Circuit further explained "to allege an agreement between antitrust co-

7    conspirators, the complaint must allege facts such as a 'specific time, place, or person involved in

8    the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an

9    idea of where to begin."  *Id*. at 1047.  Moreover, the Ninth Circuit expressed concern that "a bare

10   allegation of a conspiracy is almost impossible to defend against" where the "defendants are large

11   institutions with hundreds of employees entering into contracts and agreements daily."  *Id*.  Under

12   *Kendall*, Plaintiffs' Complaint is essentially a formulaic recitation of elements and conclusory

13   allegations.  Contrary to Plaintiffs' argument, simply alleging that E3, Aetna, and United

14   conspired is not a sufficient allegation of the "who."  Defendant Insurers are large organizations,

15   and Plaintiffs' bare allegation of a conspiracy would be essentially impossible to defend against.

16   Plaintiffs' allegations as to the "what," "who," "where," and "when" are similarly lacking in

17   factual support and would also be impossible to defend against.

18          Plaintiffs attempt to persuade this Court by citing several cases that purportedly stand for

19   the proposition that Plaintiffs' Complaint is sufficiently pled.  However, only five of Plaintiffs'

20   citations post-date *Twombly and Kendall* and involve motions to dismiss.  *See Anderson News,*

21   *L.L.C. v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012); *Watson Carpet & Floor Covering Inc. v.*

22   *Mohawk Indus., Inc.*, 648 F.3d 452 (6th Cir. 2011); *Arapahoe Surgery Ctr., LLC v. Cigna*

23   *Healthcare, Inc.*, 80 F. Supp. 3d 1257 (D. Colo. 2015); *TruePosition, Inc. v. LM Ericsson Tel. Co.*,

24   No. CIV.A.11-4574, 2012 WL 3584626 (E.D. Pa. Aug. 21, 2012); *In re Delta/AirTran Baggage*

25   *Fee Antitrust Litig.*, 733 F. Supp. 2d 1348 (N.D. Ga. 2010).  And none of these five cases support

26

27   [2] Although Plaintiffs correctly note that the Plaintiffs in *Kendall* were allowed to conduct
     discovery, this distinction is immaterial because the Ninth Circuit in *Kendall* was addressing "the
     pleading requirements to state a claim for antitrust violations under Section 1 of the Sherman Act
28   following…[Twombly]."  *Kendall*, 518 F.3d at 1044.

1    Plaintiffs' argument.  As an example, in *In re Delta*, the complaint contained allegations about

2    specific dates, meetings, and people including how the alleged conspirators communicated with

3    each other, when they did so, who was involved in the communications, and what they

4    communicated.  *In re Delta*, 733 F.Supp.2d at 1352–56.  To be clear, the Court is not requiring

5    Plaintiffs to provide the same level of detail as contained in these five cases as fewer details may

6    be sufficient under *Kendall and Twombly* but Plaintiff would be well-served to review these five

7    cases.  Since the Court finds Plaintiffs have not alleged sufficient facts supporting a violation of

8    the Sherman Act, the Court does not address Defendant Insurers' argument that to the extent

9    Plaintiffs have alleged any facts, those facts are consistent with independent action.

10                              2.          Economic Sense

11          Defendant Insurers also argue that Plaintiffs' antitrust theory does not make economic

12    sense.  Def. Insurers' Mot. at 9-10.  Defendant Insurers claim that as insurers who pay for

13    ambulatory surgical center services, they have a strong interest in preserving and increasing

14    competition.  *Id*.  Without competition, prices would increase and Defendant Insurers would have

15    to pay more for services.  *Id*.  Plaintiffs argue that Defendant Insurers have "significant dominance

16    and influence" within the ASC market.  Pls.' Opp. to Def. Insurers at 8-9, ECF 49.  As a result of

17    this influence, Defendant Insurers have the power to determine reimbursement rates for out-of-

18    network providers and refuse to agree to reasonable in-network rates.  *Id*.

19          While "[a]ntitrust claims must make economic sense," *Adaptive Power Solutions*, 141 F.3d

20    at 952, the economic theory put forth by Plaintiffs is not supported by the Complaint and instead

21    consists purely of attorney argument.  As an example, in arguing that the alleged conspiracy

22    makes economic sense, Plaintiffs cite paragraphs 22-24, and 26 of the Complaint as support for

23    the fact that Defendant Insurers wield significant dominance and influence over the ASC market.

24    However, none of the cited paragraphs discuss Defendant Insurers' dominance and influence in

25    the market.  The Court cannot assume economic rationality when Plaintiff has failed to support its

26    argument with the Complaint.

27                              **b.  Actual Injury to Competition**

28          Defendants argue that Plaintiffs failed to adequately define the market, failed to allege

United States District Court
Northern District of California

1    Defendants possess market power, and failed to allege injury to competition as a whole.

2    Defendant E3 also argues that Plaintiffs have failed to plead a valid market foreclosure theory.

3                                          1.        Relevant Market

4          Defendants argue that Plaintiffs' market definition of "Northern California" is not an

5    appropriately defined geographic market.  Plaintiffs argue that "Northern California" is an

6    appropriate and relevant market because the geographic market for medical care tends to be local

7    and patients and physicians are unlikely to travel significant distances to a particular ambulatory

8    surgical center.  Plaintiffs also argue that the relevant geographic market is a factual issue for the

9    jury.

10         Although detailed factual findings at the pleading stage are not required, "Plaintiff must

11   provide enough facts [about the relevant market] to enable the opposing party to defend itself

12   effectively."  *Orchard Supply hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002,

13   1010 (N.D. Cal. 2013) (internal quotations omitted).  Here, Plaintiffs' market definition is vague

14   and should be alleged with greater specificity.  Currently, Plaintiffs' geographic market could

15   potentially span from McKinleyville, California to San Luis Obispo, California.  However,

16   Plaintiffs' own argument that physicians and patients are unlikely to travel significant distances is

17   at odds with the potential vastness of the vaguely defined geographic market of Northern

18   California.  Thus, the Court finds Plaintiffs' market definition is not appropriately defined.

19                                          2.   Market Power

20         Defendants argue that Plaintiffs' Complaint does not contain any allegations that

21   Defendants possess market power.  Def. Insurers' Mot. at 14, ECF 35.  Defendants also contend

22   that there are no allegations that Defendant E3 possesses market power in the alleged ambulatory

23   surgical center services market in Northern California.  *Id*; Def. E3's Mot. at 12, ECF 31.

24   Plaintiffs respond that the Complaint alleges anticompetitive effects which Plaintiffs claim is a

25   surrogate for market power, or in the alternative, the Complaint adequately alleges Defendants

26   have market power.  Pls.' Opp. at 12-18, ECF 49.

27         In cases alleging boycotts, Defendants must "possess[] market power or exclusive access

28   to an element essential to competition."  *Nw. Wholesale Stationers, Inc. v. Pac. Stationary and*

United States District Court
Northern District of California

1    *Printing Co.*, 472 U.S. 284, 296 (1985).  The Court agrees with Defendants and finds that

2    Plaintiffs have not sufficiently alleged Defendants possess market power.  Plaintiffs allege that

3    Defendants have "substantial influence" on the market but it is unclear whether that means

4    Defendants allegedly have market power.  Plaintiffs also make several assertions in their

5    opposition papers, such as claiming the healthcare industry is a highly concentrated oligopoly, that

6    are not alleged in the Complaint.  Finally, in order for anticompetitive effects to be a surrogate for

7    market power, Plaintiffs must adequately plead injury to competition.  As discussed in the next

8    section, Plaintiffs have not sufficiently pled injury to competition and therefore, Plaintiffs cannot

9    use anticompetitive effects as a surrogate for market power.

### 3.  Injury to Competition

11   Defendants argue that Plaintiffs have not alleged injury to the competition in the "market

12   as a whole" other than through one conclusory allegation that consumers have paid higher prices.

13   Plaintiffs argue they have sufficiently alleged injury to competition by alleging that physicians

14   have been restricted from functioning in a competitive and open market and that the quality and

15   choice of facilities and physicians have been reduced.

16   In pleading injury to competition, "plaintiffs must plead an injury to competition beyond

17   the impact on the plaintiffs themselves." *Brantley*, 675 F.3d at 1198.  The Court agrees with

18   Defendants and finds that Plaintiffs have not sufficiently alleged injury to competition.  Upon

19   review of the Complaint, Plaintiffs allegations of injury to competition are conclusory.  Plaintiffs

20   simply recite the legal conclusion that competition has been harmed without sufficient factual

21   support.  *See e.g.*, Compl. ¶¶ 21, 33.  Thus, Plaintiffs have failed to sufficiently plead injury to

22   competition.

### 4.  Market Foreclosure

24   Defendant E3 argues that Plaintiffs have not pled a valid market foreclosure theory.

25   Plaintiffs counter that allegations of market foreclosure are typically only required in antitrust

26   cases involving exclusive dealing.

27   The Court agrees with Plaintiffs and finds that Plaintiffs are not required to plead market

28   foreclosure in a non-exclusive dealings antitrust case.  As Defendant E3 recognizes, there must be

United States District Court
Northern District of California

11

1    an anticompetitive impact on the market. However, substantial market foreclosure is just one

2    "indicia of an actual adverse effect on competition, [and it is] not the only indicia." *US Airways,*

3    *Inc. v. Sabre Holdings Corp.*, Case No. 11-cv-2725-LGS, 2015 WL 2405569, at \*12 (S.D.N.Y.

4    Jan. 6, 2015). An adverse effect can be shown through other means such as evidence of increased

5    prices. *Id*. Thus, Plaintiffs are not required to plead substantial foreclosure as long as they

6    sufficiently plead an adverse effect on competition through other indicia.

7           In summary, the Court finds Plaintiffs have failed to sufficiently plead a violation of

8    Section 1 of the Sherman Act and accordingly, the Court GRANTS Defendants' motions to

9    dismiss with leave to amend as to Plaintiffs' Sherman Act claim.

10          **B.      Cartwright Act and Unfair Competition Law**

11       Plaintiffs' Cartwright Act Claim and Unfair Competition Law claims are predicated on the

12   same allegations and theories as the Sherman Act claim. For the reasons explained in the Court's

13   dismissal of the Sherman Act claim, the Court GRANTS Defendants' motions to dismiss with

14   leave to amend as to these two claims.

15          **C.      Intentional Interference with Prospective Economic Advantage and Actual
                      Contractual Relationships**

16          Defendants argue that Plaintiffs have failed to sufficiently state claims for intentional

17   interference with prospective economic advantage and actual contractual relations. To state a

18   claim for intentional interference with contractual relations under California law, a plaintiff must

19   allege the following elements: (1) a valid contract between plaintiff and a third party; (2)

20   defendant's knowledge of the contract; (3) an intentional act to induce a breach of the contract; (4)

21   an actual breach of the contract; and (5) damage. *Pacific Gas & Electric Co. v. Bear Stearns &*

22   *Co.*, 50 Cal. 3d 1118, 1126 (1990). With respect to a claim for tortious interference with

23   prospective economic advantage, a plaintiff must allege the same elements for an economic

24   relationship, and also plead that the defendant's conduct was independently wrongful by some

25   legal measure. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-1154 (2003).

26          With respect to the intentional interference with prospective economic advantage claim,

27   since Plaintiffs have not properly pled the antitrust claim, Plaintiffs have not satisfied the element

28

United States District Court
Northern District of California

12

1    of an independent intentional wrongful act.  With respect to the intentional interference with actual

2    contractual relationships claim, Plaintiffs' Complaint simply recites conclusory allegations about

3    its economic relationships with Dr. Andy Yu, Dr. Peter Yuan, Dr. Julia Kahan, Dr. Norman

4    Kahan, Dr. Samir Sharma, Dr. Jeff Gutman, and Dr. Shahram Gholami.  Contrary to Plaintiffs'

5    argument that it has pled sufficient facts, the Complaint does not even describe how these

6    physicians are related to Plaintiffs.  Accordingly, the Court GRANTS Defendants' motions to

7    dismiss as to the intentional interference with prospective economic advantage claim and

8    intentional interference with actual contractual relations claim.

9        **D.    Statute of Limitations**

10            Finally, Defendants argue that Plaintiffs' antitrust and unfair competition law claims are

11   time-barred under the four-year statute of limitations and the intentional interference claims are

12   time-barred under the two-year statute of limitations.  Defendants contend that if the alleged

13   conspiracy began in early 2010, Plaintiffs' antitrust and unfair competition law claims were time-

14   barred in early 2014.  With respect to the intentional interference claims, Defendants note that

15   Plaintiffs allege that doctors stopped referring their cases to Plaintiffs in February 2012 and

16   therefore Plaintiffs' claims would have been time-barred in 2014.  Plaintiffs argue that statute of

17   limitations defenses are generally not resolved on motions to dismiss and that in any event,

18   Plaintiffs' antitrust, unfair competition law, and intentional interference claims are not time-barred

19   because Defendants' actions constitute a continuing antitrust violation.

20            Under the "continuing violation" doctrine, "each overt act that is part of the [antitrust]

21   violation and that injures the plaintiff . . . starts the statutory period running again, regardless of

22   the plaintiff's knowledge of the alleged illegality at much earlier times."  *Klehr v. A.O Smith*

23   *Corp.*, 521 U.S. 178, 189 (1997) (internal citations and quotations omitted); *Pace Indus. v. Three*

24   *Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987) ("A continuing violation is one in which the

25   plaintiff's interests are repeatedly invaded and a cause of action arises each time the plaintiff is

26   injured.").  An overt act restarts the statute of limitations if it: (1) is "a new and independent act

27   that is not merely a reaffirmation of a previous act"; and (2) "inflict[s] new and accumulating

28   injury on the plaintiff."  *Pace Indus. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1989).

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1    The Court agrees with Defendants and finds that Plaintiffs claims, as alleged, are time-

2    barred.  As an initial matter, the Court finds that statute of limitations defenses are appropriately

3    considered on motions to dismiss.  *See, e.g., In re Animation Workers Antitrust Litig.*, 14-CV-

4    04062-LHK, 2015 WL 1522368 (N.D. Cal. April 3, 2015) (determining whether antitrust violation

5    was time-barred on a motion to dismiss).  In *In re Animation Workers Antitrust Litig.*, the court

6    found the allegation that "Defendants repeatedly invaded Plaintiffs' . . . interests," was insufficient

7    to show a continuing violation.  *Id*. at *12.  Here, Plaintiffs' only support for a continuing

8    violation is that Defendants are engaged in a "continu[ing]" stream of communications and that

9    Plaintiffs still remain an out-of-network provider.  However, Plaintiffs' Complaint lacks any

10   allegations of new or independent actions taken after 2010 that caused Plaintiffs any new or

11   accumulating injury.  Thus, Plaintiffs fail to allege an overt act after early 2010 that was taken by

12   Defendants that would restart the statute of limitations.  *See Pace*, 813 F.2d at 237 ("[E]ven when

13   a plaintiff alleges a continuing violation, an overt act by the defendant is required to restart the

14   statute of limitations and the statute runs from the last overt act.")  Plaintiffs must sufficiently

15   allege that Defendants engaged in a "new and independent act that [was] not merely a

16   reaffirmation of a previous act," which "inflict[ed] new and accumulating injury" on Plaintiffs to

17   restart the statute of limitations.  *Id*. at 238.  Accordingly, the Court GRANTS Defendant Insurers'

18   motion to dismiss as to this issue with leave to amend.

19   **IV.    ORDER**

20      For the foregoing reasons, IT IS HEREBY ORDERED that:

21      1.  The Court GRANTS Defendants' motions to dismiss WITH LEAVE TO AMEND as

22          to Plaintiffs' claim for a violation of Section 1 of the Sherman Act.

23      2.  The Court GRANTS Defendants' motions to dismiss WITH LEAVE TO AMEND as

24          to Plaintiffs' claim for a violation of the Cartwright Act.

25      3.  The Court GRANTS Defendants' motions to dismiss WITH LEAVE TO AMEND as

26          to Plaintiffs' claim for a violation of the Unfair Competition Law.

27      4.  The Court GRANTS Defendants' motions to dismiss WITH LEAVE TO AMEND as

28          to Plaintiffs' claim for intentional interference with prospective economic advantage.

14

5.   The Court GRANTS Defendants' motions to dismiss WITH LEAVE TO AMEND as

to Plaintiffs' claim for intentional interference with actual contractual relations.

**IT IS SO ORDERED.**

Dated: September 21, 2015

_____

BETH LABSON FREEMAN
United States District Judge